### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

DEBRA-ANN WELLMAN      )
                             )
            Plaintiff,    )     C.A. No. 05-279 (SLR)
                             )
      v.                    )
                             )
THE DUPONT COMPANY     )
                             )
            Defendant.   )

### DEFENDANT E. I. DU PONT DE NEMOURS AND COMPANY'S
### OPENING BRIEF IN SUPPORT OF ITS
### MOTION FOR SUMMARY JUDGMENT

POTTER ANDERSON & CORROON LLP
Kathleen Furey McDonough (#2395)
Sarah E. DiLuzio (#4085)
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000
kmcdonough@potteranderson.com
sdiluzio@potteranderson.com

*Attorneys for Defendant E. I. du Pont de Nemours
and Company*

Date: August 31, 2007

## TABLE OF CONTENTS

**PAGES**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENTS.........................................................................................2

STATEMENT OF FACTS ..................................................................................................3

ARGUMENT   ...................................................................................................................10

I.      SUMMARY JUDGMENT IS APPROPRIATE BECAUSE
        PLAINTIFF CANNOT DEMONSTRATE ANY MATERIAL
        ISSUES OF FACT AND DEFENDANT IS ENTITLED TO
        JUDGMENT AS A MATTER OF LAW .........................................................10

        A.      General Summary Judgment Standards ................................................10

II.     DUPONT IS ENTITLED TO JUDGMENT AS A MATTER OF
        LAW BECAUSE IT WAS NOT PLAINTIFF'S EMPLOYER .......................11

        A.      Only Plaintiff's Employer, DDE, Can Be Held Liable for
                Alleged Acts of Discrimination Under Title VII or the ADA ..............11

        B.      Absent Extraordinary Circumstances Not Present Here, A
                Parent Corporation Is Not Liable for Its Subsidiary's Alleged
                Employment Discrimination..................................................................12

CONCLUSION ..................................................................................................................18

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)..................................................................................................10

*Child Care of Irvine v. Facchin,*
1998 WL 409363 (Del. Ch. July 15, 1998)..............................................................17

*Celotex Corp v. Catrett,*
477 U.S. 317 (1986)..............................................................................................10, 11

*Doe v. William Shapiro, Esq. P.C.,*
852 F. Supp. 1246 (E.D. Pa. 1994) ...........................................................................11

*DuPont Dow Elastomers, L.L. C.,*
332 N.L.R.B. 1071 (2000) ............................................................................6, 14, 16

*Elf Atochem North Am., Inc. v. Jaffari,*
727 A.2d 286 (Del. Supr. 1999)................................................................................16

*Frank v. U.S. West, Inc.,*
3 F.3d 1357 (10th Cir. 1993) ....................................................................................14

*Interactive Corp. v. Vivendi Universal, S.A.,*
2004 WL 1572932 (Del. Ch. July 6, 2004)..............................................................17

*Johnson v. Flowers Indus., Inc.*
814 F.2d 978 (4th Cir. 1987) ....................................................................................14

*Martin v. Safeguard Scientifics, Inc.,*
17 F. Supp.2d 357 (E.D. Pa. 1998) ..........................................................................13

*Marzano v. Computer Science Corp. Inc.,*
91 F.3d 497 (3d Cir. 1996)............................................................................12, 13, 14

*McCarron v. British Telecom,*
2002 U.S. Dist. LEXIS 15151 (E.D. Pa. Aug. 7, 2002).........................................14

*Poore v. Fox Hollow Enterprises,*
1994 WL 150872 (Del. Super. Ct. Mar 29, 1994) .................................................16

*Petr v. Delaware Air Nat'l Guard,*
1995 U.S. Dist. LEXIS 14484 (D. Del. Sept. 28, 1995)...........................................10

*Ratcliffe v. Insurance Co. of North America,*
    482 F. Supp. 759 (E.D. Pa. 1980) ............................................................12

*Rogers v. Sugar Tree Products, Inc.*
    7 F.3d 577 (7th Cir. 1993) .....................................................................14

*Swallows v. Barnes & Noble Book Stores, Inc.,*
    128 F.3d 990 (6th Cir. 1997) .................................................................14

*Thomas v. Hobbs,*
    2005 WL 1653947 (Del. Super. Ct. Apr. 27, 2005)....................................15

*Trustees of the Village of Arden v. Unity Construction Co.,*
    2000 WL 130627, (Del. Ch. Jan. 26, 2000)...............................................17

*Word v. Potter,*
    149 Fed. Appx. 97 (3d Cir. 2005)...............................................................8

*Wiers v. Barnes,*
    925 F. Supp. 1079 (D. Del. 1996)..............................................................10

## OTHER AUTHORITIES

6 Del. C. §18-201(b) ....................................................................................12, 17

6 Del. C. §18-303.................................................................................................15

6 Del. C. §18-503.................................................................................................16

6 Del. C. §18-1107(a) ..........................................................................................16

42 U.S.C. § 2000e-5(e)(1).......................................................................................8

42 U.S.C. § 2000e-2.............................................................................................11

42 U.S.C. § 12112(a) ...........................................................................................11

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Debra-Ann Wellman, acting *pro se*[1], filed the Complaint in this action on May 9, 2005.[2]  (D.I. 1)  The Complaint asserts claims under Title VII of the Civil Rights Act of 1964 against Defendant E. I. du Pont de Nemours and Company ("DuPont") for discrimination, sexual harassment, and retaliation Plaintiff claims to have suffered while she was employed by another entity – DuPont Dow Elastomers, L.L.C. – during the years 2001 and 2002.  The factual basis for Plaintiff's allegations is set forth in the charge of discrimination she filed with the Equal Employment Opportunity Commission, which is attached to the Complaint.  The charge alleges that Plaintiff was discriminated against on the basis of her sex when she was sexually harassed and forced to work in a hostile work environment, and that she was discharged in retaliation for complaining and because of her sex and disability.  DuPont filed a timely Answer and asserted several affirmative defenses, including that it was not Plaintiff's employer during the time period in which *any* of the allegations in Plaintiff's Complaint occurred.  (D.I. 3)

DuPont commenced discovery and took Plaintiff's deposition.  Plaintiff did not conduct any discovery in this matter.  DuPont now moves the Court to enter summary judgment in its favor on all of Plaintiff's claims and submits this Opening Brief in support of its motion.

---

[1] The Court later appointed counsel to represent Plaintiff.  (D.I. 8)

[2] Plaintiff also filed separate, but identical, actions against DuPont Dow Elastomers, L.L.C. and the The Dow Chemical Company.  (C.A. 05- 0278-SLR and C.A. 05-cv-0280-SLR respectively)  The action against The Dow Chemical Company was dismissed by order of this Court on March 20, 2007.  (C.A. 05-cv-0280-SLR at D.I. 40)

## **SUMMARY OF ARGUMENT**

I.    DuPont Is Entitled to Judgment As A Matter Of Law Because It Was Not
      Plaintiff's Employer During the Time Period in Which Any Of The Allegations
      In Plaintiff's Complaint Occurred.

II.   DuPont Is Entitled To Judgment As A Matter Of Law Because Plaintiff Has
      Failed To Establish A Genuine Issue Of Material Fact And Cannot Support All
      The Elements Of Her Claims.

## STATEMENT OF FACTS

It is undisputed that Plaintiff Debra-Ann Wellman ("Plaintiff") was employed by DuPont Dow Elastomers, LLC from April 1, 1996 through August 26, 2002. (Dep. A94-95; A102; A109-110)[3]  Each and every allegation contained in the Complaint concerns incidents that occurred during the years 2001 and 2002, during which Plaintiff admits she was employed by DDE. (Dep. A94-95, A114; Cronin Aff. ¶2, A72)  Moreover, the individuals Plaintiff identifies in her Complaint as having created a hostile work environment, Paul Graves and Mary Ann Price, were likewise DDE employees during the relevant time period. (Dep. A118-122; Cronin Aff. ¶4, A73)

### Plaintiff's Employment with DDE

DuPont Dow Elastomers, LLC was formed on April 1, 1996 as a limited liability company under Delaware law. (Sabol Aff. ¶2, A1)  Prior to the formation of DDE, Plaintiff was employed by DuPont as an administrative assistant. (Dep. A96-97)  When DDE was formed, however, Plaintiff resigned her position with DuPont and accepted an offer of employment with DuPont Dow Elastomers, LLC. (Dep. A99-100)  Indeed, in order to become employed by DDE, employees of Dow and/or DuPont were required to resign or retire and became solely employed by DuPont Dow Elastomers, LLC. (Sabol Aff. ¶7, A2)  Plaintiff understood that, by accepting a position with DDE, she was "severing" from DuPont. (Dep. A101)  Plaintiff, like other incoming DDE employees, also had her pension benefits transferred from DuPont's pension plan to DDE's independent, separately funded pension plan. (Sabol Aff. ¶7, A2-3, Ex. D, A38-41)

---

[3]  Pertinent documentary evidence, excerpts from Plaintiff's deposition transcript and supporting affidavits are included in Defendant's Appendix to its Opening Brief in Support of its Motion for Summary Judgment, referred to herein as ("A__"), and filed contemporaneously herewith.

Contrary to Plaintiff's allegations, employees resigning from DuPont in order to join DDE were not promised re-employment with DuPont. (Sabol Aff. ¶9, A3) During several town hall meetings and brown-bag lunches, employees were informed that, once they joined DDE, they should expect to spend their careers with DDE, and should not expect to return to their previous employment with DuPont or Dow. (Dep. A98-99, A102-103; Sabol Aff. ¶8, A3) Furthermore, DDE's Formation Agreement specifically provides "Venture employees should expect to make their careers within the Venture and not transfer back to Dow or DuPont. Dow and DuPont will not offer employment to Venture employees without first consulting with Venture management." (Sabol Aff. ¶8, A3, Ex. E §13.02(c), A45) To ensure this principle was honored, DuPont and Dow promulgated policies titled "Principles for Employee Movement Between Owners and DuPont Dow" and "Principles Regarding Employment Offers by the Owners," both of which emphasized that transfers between companies would be the exception. (Sabol Aff. ¶9, A3) DDE employees were permitted to apply for positions with DuPont or Dow only with the approval of DDE's senior leadership team and consistent with DDE's business needs. (Id.) Plaintiff was aware during her employment with DDE that she had to have permission from DDE to seek a position with DuPont. (Dep. A133-134)

Ms. Wellman remained an employee of DDE for seven years, until her termination from that company on August 26, 2002. (Dep. A109-110; Cronin Aff. ¶2, A72) During her employment with DDE, Plaintiff's wages were paid solely by DDE. (Dep. A102; Cronin Aff. ¶2, A72, Ex. A, A76-77) Additionally, as a DDE employee Plaintiff was eligible to participate in DDE's Variable Pay Plan, which allowed her to earn additional compensation based upon the performance of DDE's business units. (Dep. A131-132; Cronin Aff. ¶3, A72-73, Ex. B, A79)

According to her own testimony, Plaintiff even advanced within DDE and received a "full level promotion" at one point. (A111)

Throughout her employment with DDE, Plaintiff worked as an administrative assistant for several different business groups within DDE and was supervised by a number of different individuals - each of whom were DDE supervisors and managers, not employees of DuPont or Dow. (Dep. A104-108, A112-113, A118-120; Cronin Aff. ¶4, A73) Despite Plaintiff's repeated characterization of her supervisors as having come from DuPont or Dow, she acknowledges that, during the time that she reported to them, all were employees of DDE, as was she. (*Id.*)

**Formation of DDE**

DuPont Dow Elastomers, LLC was a joint venture between DuPont and The Dow Chemical Company. DuPont and Dow, directly or indirectly, each had a fifty percent interest in DDE. (Sabol Aff. ¶2, A1) DDE was governed, globally, by a members committee, the equivalent of a corporate board of directors. (Sabol Aff. ¶3, A1-2) The DDE members committee was composed of two (2) representatives from Dow and two (2) from DuPont. (*Id.*) As a result of this structure, neither DuPont nor Dow were able to unilaterally control DDE, and the two companies had to work cooperatively to operate DDE successfully. With one exception[4], the senior management team of DDE, which managed its day-to-day operations, was made up of individuals employed solely by DDE. (*Id.*) Members of DDE's senior management team were located in DDE's headquarters in Wilmington, Delaware. (*Id.*)

DDE was formed as a separate legal entity and was treated as such by DuPont and Dow. DDE held title to significant assets, including DuPont and Dow's former elastomers businesses and the physical buildings and equipment at DDE plant sites. (Sabol Aff. ¶4, A2)  DDE

---

[4] At least one individual who served as Chief Financial Officer of DDE was a Dow employee, loaned to DDE. (Sabol Aff. ¶3, A1-2)

purchased its own raw materials, and marketed its own products. (*Id.*) DDE established its own bank accounts and internal accounting functions. (*Id.*) DDE purchased workers' compensation and other insurance policies, and obtained a federal employer identification number. (*Id.*) DDE was responsible for its own labor relations. (*Id.*; *DuPont Dow Elastomers, L.L. C.,* 332 N.L.R.B. 1071 (2000)) DDE had its own Finance, Operations, Marketing, Legal, Human Resources, Customer Service and other departments. (Sabol Aff. ¶4, A2)

During the formation process for DDE, DuPont and Dow negotiated service agreements allowing payment for services rendered to DDE by DuPont or Dow, or by DDE to DuPont or Dow, at shared locations. (Sabol Aff. ¶5, A 2) DDE was billed for such services. (*Id.*) DDE was not required to buy needed services from DuPont or Dow. (*Id.*) Likewise, DuPont, Dow and DDE were each free to discontinue the provision of any services no longer desired. (*Id.*) Such a service agreement was negotiated between DuPont and DDE whereby DDE paid DuPont for integrated health services for its employees, including use of an Employee Assistance Program ("EAP"). (Sabol Aff. ¶6, A2)

Finally, DDE developed its own, separate employee policies. (Sabol Aff. ¶11, A4) Employment decisions regarding DDE employees were made by DDE management in consultation with DDE's Human Resources Department. (Sabol Aff. ¶10, A3) DuPont played no part in daily employment decisions regarding DDE employees, nor was DuPont kept informed of those decisions. (*Id.*)

**Plaintiff's Allegations**

Although Plaintiff makes vague assertions about previous "abuse" she suffered while employed by DDE, the relevant time period for purposes of her Complaint is July 2001 (when Paul Graves became her supervisor) through August 2002 (when she was terminated). (D.I. 1)

6

The Complaint (supported by Plaintiff's EEOC charge of discrimination) sets forth fourteen incidents that Plaintiff contends support her claim that she was subject to sexual harassment and a hostile work environment while employed by DDE. (*Id.*) Each of those allegations relates to Paul Graves, Plaintiff's supervisor at DDE from mid-2001 through her termination. (*Id.*) Indeed, Plaintiff testified that it was Mr. Graves and a co-worker, Mary Ann Price, who were responsible for the hostile work environment she believes to have existed at DDE. (Dep. A123-124) Both were DDE employees. Mr. Graves was employed by DDE from April 1, 1996 through June 30, 2005, and Ms. Price was employed by DDE from April 1, 1996 through June 30, 2005. (Cronin Aff. ¶4, A73)

The only allegation in Plaintiff's complaint that even mentions a DuPont employee is the last, in which Plaintiff recounts that she contacted DDE's Employee Assistance Program in February 2002 and was assigned an EAP counselor, Michael Sherman, who was a DuPont employee. This allegation, however, in no way forms the basis for Plaintiff's claim that she was subjected to a hostile work environment, and is provided merely as background for Plaintiff's departure from DDE. The EAP available to DDE employees, including Plaintiff, was provided by DuPont and staffed by DuPont employees. As explained above, however, the EAP was part of a package of integrated health services that DDE *purchased* from DuPont for use by DDE employees. (Sabol Aff. ¶¶5-6, A2)

On February 11, 2002, after consultation with her EAP counselor and physicians, Plaintiff left work at DDE. She later applied for, and received, short term disability leave from DDE. While on short term disability leave, Plaintiff continued to have contact with an EAP counselor and DDE's Human Resources personnel regarding her status. Plaintiff refused to return to work at DDE and instead insisted that she be provided a position with DuPont. DDE's

Director of Human Resources, Catherine LaPenta, advised Plaintiff that "DuPont Dow Elastomers is a separate legal entity from DuPont and, as such, is not in a position to obtain employment for you within DuPont." (A83)  However, at Plaintiff's request, Ms. LaPenta did inform DuPont that Plaintiff had DDE management's permission to apply for jobs within DuPont.  Plaintiff then applied for two positions with DuPont, both of which were filled by current DuPont employees[5].  (A84-92)  Plaintiff exhausted the allowable short term disability leave under DDE's short term disability policy and still refused to return to work at DDE.

Ultimately, Ms. Wellman was terminated from DDE for job abandonment.  DDE management, in consultation with DDE's Human Resources Department, made the decision to terminate her employment.  (Cronin Aff. ¶5, A73-74)  In making that decision, DDE personnel were guided by DDE policies.  DuPont was not consulted, nor informed of, any employment decisions regarding Ms. Wellman.  (*Id.*)  DDE sent Plaintiff a letter, on DDE letterhead and signed by a DDE representative, dated August 26, 2002 that advised Plaintiff she was terminated for failure to report to work following her release from short term disability leave.  (*Id.*; Ex. C, A81-82)

**Plaintiff's Claim Against DuPont**

Plaintiff filed her initial charges of discrimination with the EEOC on August 15, 2002; and amended those charges on December 1, 2002 to add a retaliation claim.  Following a full investigation, the EEOC did not find cause to support Plaintiff's allegations against DuPont (or

---

[5] Plaintiff did not raise a claim against DuPont for failure to hire in her EEOC charge of discrimination or her Complaint in this action. Accordingly, any attempt to fashion such a claim at this point is barred by the applicable statute of limitations and the exhaustion of remedies doctrine. *See* 42 U.S.C. § 2000e-5(e)(1) (charge must be filed within 300 days of the alleged unlawful employment practice or its discovery); *Word v. Potter*, 149 Fed. Appx. 97, 99 (3d Cir. 2005) ("As a precondition to suit, plaintiffs in Title VII cases are required to exhaust their administrative remedies").

Dow or DDE).    Plaintiff then initiated this suit, based on the same allegations that were contained in her amended charge of discrimination.    Plaintiff testified repeatedly at her deposition in this matter that the sole basis for her claim against DuPont is her believe that DuPont was her "parent company" and was, therefore, "responsible for [her.]"  (Dep. A115-117, A121-122, A129-130)  Indeed, when asked whether any DuPont employee participated in *any* of the sexual harassment she claims to have experienced at DDE, Plaintiff said "no."  (Dep. A129-130)

**ARGUMENT**

I.    **SUMMARY JUDGMENT IS APPROPRIATE BECAUSE PLAINTIFF CANNOT DEMONSTRATE ANY MATERIAL ISSUES OF FACT AND DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

        A.    **General Summary Judgment Standards.**

Summary judgment is required where "the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wiers v. Barnes*, 925 F. Supp. 1079, 1085 (D. Del. 1996) (citing Fed. R. Civ. P. 56(c)). A dispute regarding a material fact is genuine only if "the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Further, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* As this Court has recognized, "the mere existence of <u>some</u> evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue." *Petr v. Delaware Air Nat'l Guard*, 1995 U.S. Dist. LEXIS 14484, *5 (D. Del. Sept. 28, 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (emphasis added). Thus, a defendant is entitled to summary judgment if it can demonstrate a

complete failure of proof concerning an essential element of a plaintiff's claim, so as to render all other facts immaterial. *Celotex*, 477 U.S. at 322-23.

In this case, there is no dispute regarding the relevant facts. Plaintiff readily concedes that DDE was her employer and that the alleged harassment she suffered was perpetrated by DDE employees. Plaintiff has not presented *any* evidence that DuPont had control over her workplace at DDE or is otherwise responsible for conduct that occurred at DDE, a separate legal entity. Because the evidence is clear that DuPont was not Plaintiff's employer during the relevant time period and, therefore, is not responsible for any alleged discrimination that Plaintiff encountered while an employee of DDE, DuPont is entitled to judgment as a matter of law.

## II.    DUPONT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE IT WAS NOT PLAINTIFF'S EMPLOYER.

### A.    Only Plaintiff's Employer, DDE, Can Be Held Liable for Alleged Acts of Discrimination Under Title VII or the ADA.

Plaintiff's Complaint contends that she was terminated from DDE in violation of Title VII and, nominally, the Americans with Disabilities Act ("ADA").[6] Both Title VII and the ADA authorize a cause of action only against employers, employment agencies, and labor organizations. *See* 42 U.S.C. § 2000e-2 (defining unlawful employment practices of employers); 42 U.S.C. § 12112(a) (prohibiting discrimination in employment by "covered entity," *i.e.*, employer, employment agency or labor organization); *see also Doe v. William Shapiro, Esq. P.C.*, 852 F. Supp. 1246, 1253 (E.D. Pa. 1994) (stating in Title VII cases, the relevant issue is

---

[6] Although Plaintiff makes the bare assertion that her termination from DDE was motivated by a disability, she does not identify in what way she is, or was, disabled. Indeed, during her deposition she conceded that she did not suffer from a disabling condition at the time she was terminated and that she was fully capable of working. (Dep. A125-128)

"whether the defendant is the plaintiff's employer under the statute"). As Plaintiff acknowledges, she was employed by DDE during the relevant time period, not DuPont.

In order to state a claim against DuPont, therefore, Plaintiff must establish a basis for piercing the corporate veil between DDE and DuPont so that DDE and DuPont are deemed to be a single employer for purposes of Title VII or the ADA. *See Marzano v. Computer Science Corp. Inc.*, 91 F.3d 497, 513 (3d Cir. 1996) (*citing Ratcliffe v. Insurance Co. of North America*, 482 F. Supp. 759, 764 (E.D. Pa. 1980) ("where separate corporate entities are so interrelated and integrated in their activities, labor relations, and management, it is clear that for Title VII jurisdictional purposes they may be treated as a single employer.")). Plaintiff has failed to present *any* evidence that would justify the extraordinary step of disregarding DDE's corporate form. *See 6 Del. C.* § 18-201(b) ("A limited liability company formed under this chapter shall be a separate legal entity"). As explained above, Plaintiff did not even try to adduce any such evidence. By failing to initiate discovery, Plaintiff is left to rely upon her own, unsupported belief that, as her former employer and "parent company," DuPont was somehow "responsible" for her in perpetuity. (Dep. A115-117, A121-122, A129-130) Plaintiff's belief is entirely unreasonable given the uncontroverted facts surrounding DDE's formation and operation. (Sabol Aff. A1-4 and Cronin Aff. A72-74) Moreover, Plaintiff is wrong as a matter of law. Her attempt to hold DuPont accountable for conduct that allegedly occurred while she was employed by DDE is foreclosed by both Delaware corporate law and federal jurisprudence.

**B.    Absent Extraordinary Circumstances Not Present Here, A Parent Corporation Is Not Liable for Its Subsidiary's Alleged Employment Discrimination.**

The Third Circuit has declared that, absent extraordinary circumstances, a parent corporation is not liable for its subsidiary's alleged employment discrimination. *See Marzano v.*

*Computer Science Corp., Inc.*, 91 F.3d 497, 513-514 (3d Cir. 1996); *see also Martin v. Safeguard Scientifics, Inc.*, 17 F. Supp.2d 357, 361 (E.D. Pa. 1998) (applying rule to dismiss majority stockholder of "subsidiary" employer from Title VII action). In *Marzano*, a female employee brought a Title VII discrimination action against her former employer and its parent corporation, alleging that the parent should be held liable because: (1) plaintiff was initially hired by the parent and "always believed" she was employed by the parent; (2) when she was transferred to the subsidiary there were no apparent changes in management; (3) plaintiff received paychecks from the parent for a period of time and belonged to the parents pension plan; (4) the relevant employment policy was modeled after the parent's policy; and (5) plaintiff was regularly involved with the corporate parent while employed at the subsidiary. *See Marzano*, 91 F.3d at 514. Even accepting these facts as true, the Third Circuit concluded that they did not demonstrate that the subsidiary and its parent "were so interrelated and integrated in their activities, labor relations, and management" that the corporate veil should be pierced. *Id.*

The facts of this case are less compelling than *Marzano*. Plaintiff knew that she was severing her relationship with DuPont and being hired by DDE. (Dep. A101) As her allegations demonstrate, she experienced significant changes in management once she joined DDE. (Dep. A104-108, A112-113, A118-120) Plaintiff's salary was paid by DDE, she received benefits paid for by DDE, and participated in DDE's pension plan. (Dep. A102; Cronin Aff. ¶2, A72, Ex. A, A76-77; Sabol Aff. ¶7, A2-3, Ex. D, A38-41) Finally, there is no evidence that, while employed by DDE, Plaintiff had any significant contact with DuPont. Indeed, she was aware that she needed to seek her DDE supervisor's approval before even soliciting employment with DuPont. (Dep. A133-134) The fact that Plaintiff's EAP counselor was a DuPont employee is not

13

probative of the interrelationship between DuPont and DDE – the EAP counselor was essentially a contractor paid by DDE to provide its services to DDE employees. (Sabol Aff. ¶5, A2)

In analyzing claims that a parent is merely the alter ego of its subsidiary, many circuit courts have adopted the "integrated enterprise" test. *See Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 (4th Cir. 1987); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 994 (6th Cir. 1997); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993); *Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 582 (7th Cir. 1993). Although the Third Circuit did not articulate a specific test to be used in this instance, it did analyze factors one through three of the integrated enterprise test in its *Marzano* decision. *See Marzano*, 91 F.3d at 513-514. Under the integrated enterprise analysis, a parent may only be considered the employer of its subsidiary's employees if the two corporations share (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Id.*; *McCarron v. British Telecom*, 2002 U.S. Dist. Lexis 15151, *9 (E.D. Pa. Aug. 7, 2002) (granting defendant parent company's motion for summary judgment of ADA claim). Applying the integrated enterprise test, the National Labor Relations Board determined that DDE was not the "alter ego" of DuPont. *See DuPont Dow Elastomers, L.L.C.*, 332 N.L.R.B. 1071 (2000). In the NLRB dispute, two labor unions contended that DDE was the alter ego of DuPont. Following a two-week trial, an Administrative Law Judge for the NLRB made detailed factual findings concluding that DDE was a separate entity from its parent companies. *Id.* at 1080-1081. Specifically, the Administrative Law Judge found:

> Preceding the start-up of DDE, and once full accord of the parents was reached, Dow and DuPont went about performance of a massive number of required tasks, including the separation from the parents of assets, equipment, facilities and work forces. Effective with the formation [of DDE], Dow and DuPont agreed to place their elastomers businesses in the venture, including the

patented Dow technology and physical and other assets at the
effected sites. At the new DDE locations, its buildings and
equipment were titled in its name, but the lands on which its
facilities rest were leased from the parent companies at nominal
sum, rather than placed in the venture, in order to protect DDE
from possible environmental liability stemming from past use. At
the various sites, environmental permits and other business
licenses were transferred to the venture and DDE set up its own
bank accounts and internal accounting functions. Centrally, DDE
purchased workers' compensation and other insurance policies,
and obtained a federal employer identification number. The
venture set up its own headquarters, in Wilmington, Delaware, as
well as headquarters abroad in Geneva, Switzerland, and
Singapore.

\* \* \*

Senior management works out of the Wilmington headquarters
and, globally, DDE has its own finance, operations, marketing,
legal, human resources, customer service and other departments.

\* \* \*

Those who became DDE employees were required to sever
their relationship with the parent, that is, to resign or retire, "with
no strings back."

*Id.* The Sabol Affidavit corroborates the facts surrounding DDE's independence as described by
the NLRB. (A1-4) Plaintiff has presented no contrary evidence that would suggest DuPont
dominated the daily operations of DDE, played a role in DDE's labor relations, or otherwise
interfered with employment decisions regarding DDE employees.

As recognized by the NLRB, the fact that DDE was a joint venture between DuPont and
Dow, rather than a subsidiary, does not alter the analysis. Indeed, because DDE was a limited
liability company under Delaware law, neither DuPont (nor Dow) were responsible for its
obligations or liabilities. *See* 6 *Del. C.* § 18-303 (stating "the debts, obligations and liabilities of
a limited liability company . . . shall be solely [those] of the limited liability company, and no
member or manager of a limited liability company shall be obligated personally for any such
debt, obligation or liability"); *Thomas v. Hobbs*, 2005 WL 1653947, \*2 (Del. Super. Ct. Apr. 27,
2005) ("As with a corporation, a member of a limited liability company may not be held liable

15

for the debts, obligations and liabilities of the company."); *Poore v. Fox Hollow Enterprises*, 1994 WL 150872, *2 (Del. Super. Ct. Mar 29, 1994) (discussing LLCs generally and stating the interest of a member in the LLC is analogous to shareholders of a corporation).

     In support of her claim that DuPont was the alter ego of DDE, Plaintiff testified at her deposition that DDE "never paid any taxes" and that DuPont and Dow "split the profits and expenses 50/50." (A115) That is precisely how limited liability companies are designed to operate under Delaware's Limited Liability Company Act ("LLC Act"). The LLC Act specifically provides that "[t]he profits and losses of a limited liability company shall be allocated among the members . . . on the basis of the agreed value (as stated in the records of the limited liability company) of the contributions made by each member." 6 *Del. C.* § 18-503. Because DDE was a joint venture between DuPont and Dow, and each held a fifty percent (50%) ownership interest, the profits and losses of DDE were properly allocated to DuPont and Dow "50/50."

     Furthermore, Delaware limited liability companies are taxed like a partnership but enjoy the liability protection of a corporation. *See* 6 *Del. C.* § 18-1107(a) ("[f]or purposes of any tax imposed by the State of Delaware or any instrumentality, agency or political subdivision of the State of Delaware, a limited liability company formed under this chapter or qualified to do business in the State of Delaware as a foreign limited liability company shall be classified as a partnership"); *DuPont Dow Elastomers, L.L.C.*, 332 N.L.R.B. 1071, 1080 n.2 (2000) (noting same). Indeed, limited liability companies were created to allow tax benefits similar to a partnership, while still providing limited liability protection, much like a corporation. *Elf Atochem North Am., Inc. v. Jaffari*, 727 A.2d 286, 287 (Del. 1999); *see also Poore*, 1994 WL 150872 at *2 (stating the LLC Act treats a properly structured LLC as a partnership for federal

16

income tax purposes); *Child Care of Irvine v. Facchin*, 1998 WL 409363, *2 (Del. Ch. July 15, 1998) (noting the purpose of forming an LLC is "to obtain the 'flow-through' tax advantages afforded limited liability companies by the Internal Revenue Service"). Limited liability companies, like partnerships, are flow-through entities; meaning that the LLC does not pay tax on LLC income at the LLC level; rather, LLC income, once calculated, is allocated among individual members, who are "liable for income tax only in their separate or individual capacities." *See Interactive Corp. v. Vivendi Universal, S.A.*, 2004 WL 1572932, *10 (Del. Ch. July 6, 2004) (quoting I.R.C. § 701 regarding partnership taxation). Finally, a limited liability company formed under Delaware's LLC Act "shall be a separate legal entity" from its member companies. 6 *Del. C.* § 18-201(b).

DDE, as a valid Delaware limited liability company, simply took advantage of the tax benefits afforded it by law. Plaintiff's ignorance or misunderstanding of the limited liability company as a corporate form does not abrogate the protections afforded it by the Delaware LLC Act or the Internal Revenue Code. Nor does Plaintiff's bare "belief" that DDE's failure to pay its own taxes was somehow improper provide any basis for the corporate veil to be pierced between DuPont and DDE. Under Delaware law, a court can pierce the corporate veil of an entity only where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner. *See Trustees of the Village of Arden v. Unity Construction Co.*, 2000 WL 130627, *3 (Del. Ch. Jan. 26, 2000).

Plaintiff's argument that DuPont is responsible for the conduct of DDE seems to boil down to the fact that DuPont was a "parent" or member of the LLC. "Of course, common management of two entities does not, by itself, justify piercing the corporate veil." *Id.*

17

Accordingly, there is no basis upon which to pierce the corporate veil between DuPont and DDE, nor hold DuPont accountable as Plaintiff's employer.

DDE, as Plaintiff's employer, is the only proper defendant. In fact, Plaintiff's suit against DDE is proceeding in this Court. Plaintiff simply cast too broad a net when she filed suit against not only DDE, but Dow and DuPont as well. The Court dismissed Plaintiff's suit against Dow because Dow was not her employer. Plaintiff's suit against DuPont for alleged discrimination she experienced while an employee of DDE should likewise be dismissed.

## CONCLUSION

For all the forgoing reasons, it is hereby respectfully requested that this Court enter an Order granting DuPont's Motion for Summary Judgment and dismissing plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_

Kathleen Furey McDonough (#2395)
Sarah E. DiLuzio (#4085)
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
kmcdonough@potteranderson.com - Email
sdiluzio@potteranderson.com - Email

*Attorneys for Defendant*
*E. I. du Pont de Nemours and Company*

Date:        August 31, 2007

810472v2

18

## CERTIFICATE OF SERVICE

I, Sarah Elizabeth DiLuzio, hereby certify this 31st day of August, 2007, that the foregoing **OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) which will send notification of such filing that the document is available for viewing and downloading via CM/ECF to the following counsel of record:

> John M. Stull (No. 568)
> 1300 North Market Street
> Suite 700
> P.O. Box 1947
> Wilmington, DE 19801
> Telephone:  (302) 654-0399
> Facsimile:  (302) 654-0884
> jstullesq@aol.com

> Sarah Elizabeth DiLuzio (Del. Bar #4085)
> Potter Anderson & Corroon, LLP
> Hercules Plaza, Sixth Floor
> 1313 N. Market Street
> P.O. Box 951
> Wilmington, DE  19899
> (302) 984-6042 (Telephone)
> (302) 658-1192 (Facsimile)
> sdiluzio@potteranderson.com (Email)

810472v2